IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL WEATHER SERVICE EMPLOYEES | : |
| ORGANIZATION, | : |
| 601 Pennsylvania Ave, NW | : |
| Suite 900 | : |
| Washington, DC 20004, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| FEDERAL SERVICE IMPASSES PANEL, | : |
| 1400 K Street, NW, | : |
| Washington, DC 20424, | : |
| | : |
| and | : |
| | : |
| MARK ANTHONY CARTER, | : |
| in his official capacity as Chairman | : |
| of the Federal Service Impasses Panel, | : |
| 1400 K Street, NW, | : |
| Washington, DC 20424, | : |
| | : |
| Defendants. | : |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

Under the Constitution's Appointments Clause, "Officers of the United States" may be

appointed by the President only "by and with the Advice and Consent of the Senate." The

members of the Federal Service Impasses Panel are officers of the United States appointed by the

President. Yet none of the Panel's ten members have been confirmed by the Senate. Despite this

serious constitutional defect, the Panel is wielding substantial government power: It is asserting

jurisdiction over federal labor unions, issuing final orders that are purportedly binding on those

unions, and imposing long-term contract provisions on the unions against their will— including restrictions that go even further than those requested by employers. And the Panel's unconstitutional exercise of these broad governmental powers is more egregious still because, unlike most federal agencies, its actions are unchecked—the merits of the Panel's actions generally are not subject to any further administrative or judicial review.

There are approximately 1.2 million federal employees organized into 2,200 bargaining units, all potentially subject to the Panel's unchecked and unconstitutional exercise of federal-government power. Here, the Panel has purported to assert the power to issue a decision binding on one of those federal-sector unions: the National Weather Service Employees Organization ("NWSEO"). Because the Panel lacks authority to do so, the NWSEO brings this constitutional challenge. The NWSEO asks this Court to issue a declaration that the Panel is unconstitutionally composed and that its actions are null and void and an injunction to prevent any of the Panel's unconstitutional actions from taking effect.

Further, the Panel's jurisdiction to impose contract terms is limited by statute to only those situations in which Federal agencies and their employees' unions reach a bona fide impasse in their collective bargaining negotiations. Nonetheless, the Panel has asserted jurisdiction over the on-going collective bargaining negotiations between the National Weather Service Employees Organization and the National Weather Service in the absence of an impasse. Therefore, the NWSEO asks this Court to issue a declaration that the Panel has acted in excess of its statutory authority and delegated powers and that any decision imposing contract terms is null and void, and to issue an injunction preventing the Panel's decision from taking effect.

**PARTIES**

1.      The National Weather Service Employees Organization ("NWSEO") is a labor organization that is certified as the exclusive collective bargaining representative of nearly 3,400 forecasters, technicians and other scientific and support personnel employed by the National Weather Service (an agency of the National Oceanic and Atmospheric Administration in the U.S. Department of Commerce). NWSEO represents non-supervisory employees at 122 Weather Service Forecast Offices and 12 River Forecast Centers nationwide, as well as employees at other specialized national forecasting centers such as the National Hurricane Center in Miami and the Storm Prediction Center in Oklahoma; employees at the National Tsunami Warning Center in Alaska and the Pacific Tsunami Warning Center in Hawaii and in several smaller Weather Service Offices in remote communities in Alaska; and at various headquarters units.

2.      The Federal Service Impasses Panel is a federal entity tasked with resolving bargaining impasses between federal agencies and unions representing federal employees.

3.      Mark Anthony Carter is the Chairman of the Federal Service Impasses Panel.

**JURISDICTION AND VENUE**

4.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 2201 because it arises under the Constitution of the United States and seeks appropriate declaratory and injunctive relief. *See Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010); *Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel*, 606 F.3d 780, 787–88 (D.C. Cir. 2010).

5.      Venue is proper in this district under 28 U.S.C. § 1391(e).

3

## CONSTITUTIONAL AND STATUTORY BACKGROUND

### *The Appointments Clause*

6.     The United States Constitution provides "the exclusive means" for appointing officers of the United States. *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2051 (2018). Specifically, the Constitution's Appointments Clause requires that principal officers first be nominated by the President and then confirmed to their positions "by and with the Advice and Consent of the Senate." U.S. Const. Art. II, § 2, cl. 2.

7.     The Senate's advice and consent power "is a critical 'structural safeguard [ ] of the constitutional scheme.'" *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 935 (2017) (quoting *Edmond v. United States*, 520 U.S. 651, 659 (1997)). It "serves both to curb Executive abuses of the appointment power . . . and 'to promote a judicious choice of [persons] for filling the offices of the union.'" *Edmond*, 520 U.S. at 659 (quoting The Federalist No. 76, pp. 386–87 (M. Beloff ed. 1987) (A. Hamilton)).

8.     The "dispositive feature" identifying whether a federal official is a principal officer, as opposed to an "inferior" officer, is whether the officer is directed and supervised by others who were appointed by presidential nomination with the advice and consent of the Senate. *Ass'n of Am. Railroads v. U.S. Dep't of Transp.*, 821 F.3d 19, 38 (D.C. Cir. 2016). And "it is common ground that an officer without a supervisor must be principal." *Dep't of Transp. v. Ass'n of Am. Railroads*, 575 U.S. 43, 63–64 (2015) (Alito, J., concurring).

### *The Federal Service Impasses Panel*

9.     In 1978, Congress enacted a comprehensive set of laws regulating labor relations between federal agencies and their employees, known as the Federal Service Labor-Management Relations Statute. *See* 5 U.S.C. §§ 7101–7135. The statute was prompted by Congress's findings

4

that "labor organizations and collective bargaining in the civil service are in the public interest," and that protecting employees' right to self-organize "facilitates and encourages the amicable settlements of disputes between employees and their employers involving conditions of employment." 5 U.S.C. § 7101(a).

10.     The statute obligates Federal agencies and the unions that represent their employees to meet and negotiate in good faith for the purposes of arriving at a collective bargaining agreement. 5 U.S.C. § 7114(a)(4).

11.     In enacting the Federal Service Labor-Management Relations Statute, Congress also established the Federal Service Impasses Panel as an independent "entity" within the Authority, "the function of which is to provide assistance in resolving negotiation impasses between agencies and exclusive representatives." 5 U.S.C. § 7119(c)(1).

12.     The statute requires that the Panel consist of a Chairman and at least six other members. 5 U.S.C. § 7119(c)(2). These members must be appointed by the President, "solely on the basis of fitness to perform the duties and functions involved, from among individuals who are familiar with Government operations and knowledgeable in labor-management relations." *Id.*

13.     The Panel is presently comprised of ten members, including Chairman Mark Anthony Carter, who were appointed by the President. However, none of the Panel's current members were appointed with the Senate's advice and consent.

14.     When an agency and its employees' labor representative reach an impasse in negotiations, either party may request that the Panel resolve the dispute. 5 U.S.C. § 7119(b)(1). The Panel must promptly investigate any impasse presented to it, and then either (1) decline to assert jurisdiction if it finds that no impasse exists or that there is good cause for not asserting jurisdiction, or (2) assert jurisdiction. *See* 5 U.S.C. § 7119(c)(5)(A); 5 C.F.R. § 2471.6(a).

15.     Upon exercising jurisdiction, the Impasses Panel may use any dispute-resolution techniques to resolve the impasse, including informal conferences, additional mediation, fact-finding, written submissions, recommendations for settlement, and mediation-arbitration. *See, e.g.*, 5 U.S.C. § 7119(c); 5 C.F.R. §§ 2471.1, 2471.6.

16.     If the parties cannot reach a settlement, then the Panel may "take whatever action is necessary and not inconsistent with this Chapter to resolve the impasse," including imposing contract terms on the parties. 5 U.S.C. § 7119(5)(B)(ii).

17.     The Panel's final action "shall be binding on [the] parties during the term of the agreement, unless the parties agree otherwise." 5 U.S.C. § 7119(5)(C).

18.     The statute specifies no procedure by which the parties can appeal a final decision of the Panel. *See Council of Prison Locals v. Brewer*, 735 F.2d 1497, 1499 (D.C. Cir. 1984).

## FACTUAL ALLEGATIONS

19.     During the first half of 2019, the National Weather Service and NWSEO were actively engaged in negotiating a successor to their 2001 collective bargaining agreement, which covers NWS employees nationwide. Progress towards a new agreement continued to be made during the last three bargaining sessions, and the parties continued to exchange new proposals. During the May 28-30 and June 6 bargaining session, two matters were agreed to; NWSEO also submitted 21 proposals/counterproposals and NWS submitted 6 proposals/counterproposals. During the June 25-27 bargaining session, four matters were agreed to; NWSEO also submitted 15 proposals during this session, and the NWS submitted 52 proposals. During the July 23-25, and July 30 bargaining sessions, ten matters were agreed to; NWSEO submitted 33 new or revised proposals during this negotiation session and the NWS submitted new or revised proposals for three articles.

20.     Because of the progress towards a new agreement that was being made, on July 29 the union attempted to schedule additional bargaining sessions, proposing specific dates for August and September. However, the NWS's chief negotiator refused to schedule any additional dates and wrote that the agency would only meet for one previously scheduled session on July 30 to provide the union an opportunity to unconditionally accept its outstanding proposals.

21.     On December 19, 2019 the NWS filed a request for assistance with the Federal Service Impasses Panel, asking that it impose upon the parties the contract terms which the NWS had last proposed. The Panel docketed the NWS's request as Case No. 20 FSIP 021.

22.     On January 7, 2020 the NWSEO submitted to the Panel a position statement arguing that the Panel did not have jurisdiction to intervene in the NWS-NWSEO collective bargaining negotiations because, inter alia, the parties were not at impasse in their negotiations and because the Panel was appointed in violation of the Appointments Clause of the U.S. Constitution.

23.     On March 13, 2020 the Panel issued an Order asserting jurisdiction over the 42 outstanding articles that had not yet been resolved during bargaining between the NWS and the NWSEO. In its Order the Panel failed to address the NWSEO's objections to its jurisdiction. Instead, the Panel ordered the NWS and the NWSEO to submit their "final offers" and a supporting position statement by March 30, 2020 and provided the parties with an opportunity to submit rebuttal position statements by April 10, 2020. Upon information and belief, the matter is presently under consideration by the Panel, which is expected to issue a final decision imminently imposing contract terms on the parties.

24.     Nevertheless, since the Panel has exerted jurisdiction over this ostensible "impasse" in bargaining, the NWS and the NWSEO have continued negotiations. Since March

30, the parties have, without Panel assistance, but with its full knowledge, voluntarily reached agreement on the following thirteen articles of their successor agreement:

| Article 3 | Laws and Regulations |
| Article 4 | Rights of Management |
| Article 5 | Rights of Employees |
| Article 6 | Rights of the Union |
| Article 12 | Discipline |
| Article 18 | Equal Employment Opportunity |
| Article 23 | Travel |
| Article 27 | Miscellaneous |
| Article 33 | Position Descriptions |
| Article 34 | Official Records |
| Article 35 | Employee Assistance Programs |
| Article 41 | Surveys and Questionnaires |
| Article 43 | Furloughs |

**FIRST CLAIM FOR RELIEF**

***Violation of the Appointments Clause of the United States Constitution,
U.S. Const. Art. II, § 2, cl. 2.***

25.     The Constitution empowers the President to appoint "Officers of the United States" only "by and with the Advice and Consent of the Senate." U.S. Const. Art. II, § 2, cl. 2.

26.     The Appointments Clause thus requires that principal officers be nominated by the President and confirmed by the Senate. *See Edmond v. United States*, 520 U.S. 651, 659 (1997); *Ass'n of Am. Railroads v. U.S. Dep't of Transp.*, 821 F.3d 19, 38 (D.C. Cir. 2016).

8

27.     The members of the Federal Service Impasses Panel are principal officers within the meaning of the Appointments Clause. They exercise significant authority pursuant to the laws of the United States, including the power to issue final and unreviewable decisions imposing binding contract terms on federal agencies and their employees. And they are not supervised or directed by any other Senate-confirmed officers.

28.     Because the Panel members were not appointed with the advice and consent of the Senate, their appointment violates the Appointments Clause.

## SECOND CLAIM FOR RELIEF

29.     The statutory jurisdiction of the Panel is predicated solely on the existence of a bona fide impasse in collective bargaining negotiations. The Panel has no authority to impose contract terms or to take any other action in the absence of an impasse.

30.     The NWS and NWSEO were not at impasse in 2019 because progress towards reaching an agreement was being made when management broke off negotiations in August 2019. "[A] party to collective bargaining may not establish impasse by refusing to bargain and saying that the parties are at impasse." *GFC Crane Consultants, Inc.*, 352 N.L.R.B. 1236, 1253 (2008). Nor did impasse exist simply because the NWS was displeased about the *pace* of progress at the time it broke off negotiations in 2019. Further, the fact that both parties have re-engaged in negotiations, made concessions and compromises, and reached a significant number of agreements since March 2020, demonstrates that no impasse in negotiations exists.

31.     The Panel is fully aware of the progress towards a new agreement the NWS and the NWSEO have been making on their own, and yet it refuses to relinquish jurisdiction and has informed the parties that it intends to issue a decision imposing contract terms nonetheless.

32.     In this absence of an impasse, the Panel's exercise of jurisdiction over the NWS-NWSEO collective bargaining negotiations and any decision imposing contract terms in Case No. 20 FSIP 021 is in excess of its delegated powers and contrary to a specific prohibition in the Federal Service Labor-Management Relations Statute.

33.     The NWSEO has no other meaningful and adequate means of vindicating its rights under the FSLMR Statute and therefore this Court has jurisdiction to impose declaratory and injunctive relief prohibiting the Panel from asserting jurisdiction and voiding any decision it may issue in Case No. 20 FSIP 021. *Leedom v. Kyne,* 358 U.S. 184 (1958); *Nat'l Air Traffic Controllers Ass'n. v. FSIP*, 606 F.3d 780 (D.C. Cir. 2010); *Council of Prison Locals v. Brewer*, 735 F.2d 1497, 1500-01 (D.C. Cir. 1984).

## PRAYER FOR RELIEF

The plaintiff requests that the Court:

1.  Declare that the appointment of the Federal Service Impasses Panel violates the Appointments Clause of the U.S. Constitution;

2.  Declare that any decisions issued or actions taken by the Panel are null and void in violation of the U.S. Constitution;

3.  Declare that any decision issued by the Panel in Case No. 20 FSIP 021 is ultra vires because, in the absence of an impasse, the Panel is acting in excess of its delegated powers and contrary to a specific prohibition in the Federal Service Labor-Management Relations Statute.

4.  Enjoin the Panel, and any persons or entities acting in concert or participation with the Panel, from issuing, giving effect to, or otherwise enforcing a Panel decision or order;

5.  Award all other appropriate relief, including attorneys' fees and costs.

Respectfully submitted,

/s/ *Richard J. Hirn*

RICHARD J. HIRN
General Counsel
National Weather Service Employees Organization
5335 Wisconsin Ave, N.W.
Suite 440
Washington, DC 20015
202-274-1812
richard@hirnlaw.com
D.C. Bar No. 291849